IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

APPEAL NO. 18-1953

---

KERRON ANDREWS,

*Appellant,*

v.

BALTIMORE CITY POLICE DEPARTMENT, *ET AL.*,

*Appellees.*

---

Appeal from the United States District Court
For the District of Maryland
(Honorable Catherine C. Blake, District Judge)

---

BRIEF OF APPELLANT

---

James B. Astrachan
H. Mark Stichel
Elizabeth A. Harlan
Trisha L. Scott
Astrachan Gunst Thomas, P.C.
217 East Redwood Street, 21st Floor
Baltimore, Maryland 21202
Telephone:  410-783-3550

*Counsel for Kerron Andrews,*
*Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. _____        Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)


_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.      Does party/amicus have any parent corporations?                              YES      NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                                  YES      NO
        If yes, identify all such owners:


09/29/2016 SCC                              - 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))?    YES    NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    YES    NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    YES    NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____         _____
         (signature)                                    (date)

- 2 -

## TABLE OF CONTENTS

                                                                                          PAGE

TABLE OF AUTHORITIES ..................................................................................... iii

JURISDICTIONAL STATEMENT ......................................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ................................... 2

STATEMENT OF THE CASE ................................................................................. 3

SUMMARY OF THE ARGUMENT ...................................................................... 9

APPLICABLE STANDARD OF REVIEW ........................................................... 9

ARGUMENT ........................................................................................................... 10

    I.     THE PEN REGISTER ORDER ISSUED IN THIS
    CASE DID NOT SATISFY THE WARRANT REQUIREMENT
    OF THE FOURTH AMENDMENT. ............................................................. 10

        A.    The BPD's surreptitious use of Hailstorm, a cell-site
        simulator, to locate Mr. Andrews' cell phone inside
        a private residence constituted a search...................................................... 10

        B.    The PRO issued in this case does not satisfy the
        warrant requirement of the Fourth Amendment......................................... 12

            i.    The existence of the words *probable cause* does not
            make the PRO a warrant.......................................................................... 13

            ii.    The PRO did not describe with particularity the
            apartment located at 5032 Clifton Ave as the
            place to be searched............................................................................... 17

            iii.    The BPD did not treat the PRO like a warrant
            until its conduct was challenged by Mr. Andrews ............................... 21

i

II.    THE DISTRICT COURT ERRED IN GRANTING
SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS
WITHOUT ALLOWING MR. ANDREWS AN
OPPORTUNITY FOR DISCOVERY.............................................................. 24

III.    THE COURT SHOULD HEAR ORAL ARGUMENT
IN THIS CASE ................................................................................ 25

CONCLUSION ....................................................................................... 27

STATUTORY APPENDIX ....................................................................... 28

REQUEST FOR ORAL ARGUMENT .................................................... 35

CERTIFICATE OF COMPLIANCE....................................................... 35

CERTIFICATE OF SERVICE ................................................................ 35

ii

# TABLE OF AUTHORITIES

PAGE

## Cases

*Baltimore Sun Co., v. Goetz*, 886 F.2d 60 (4th Cir. 1989) ................................... 22

*Carpenter v. United States*, 138 S. Ct. 2206 (2018) ................................. 10, 11, 18

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................... 10

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
637 F.3d 435(4th Cir. 2011) ................................................................................. 25

*Gen. Ins. Co. of Am. v. United States Fire Ins. Co.*,
886 F.3d 346 (4th Cir. 2018) ................................................................................. 10

*Greater Baltimore Center for Pregnancy Concerns, Inc., v.
Mayor & City Council of Baltimore*, 721 F.3d 264 (4th Cir. 2013) ...................... 25

*Groh v. Ramirez*, 540 U.S. 551 (2004) ........................................................... 17, 18

*Illinois v. Gates*, 462 U.S. 213 (1983) ....................................................... 13, 14, 17

*Kyllo v. United States*, 533 U.S. 27 (2001) .................................................... 11, 12

*Maryland v. Garrison*, 480 U.S. 79 (1987) .................................................... 18, 19

*Matter of Leopold to Unseal Certain Electronic Surveillance
Applications and Orders*, 300 F.Supp.3d 61 (D.D.C. 2018) ................................. 22

*Meyers v. Balt. Cty., Md.*, 713 F.3d 723 (4th Cir. 2013) ......................................... 9

*Peters v. State*, 224 Md. App. 306, 120 A.3d 839, (2015) ............................. 18, 19

*Riley v. California*, 134 S.Ct. 2473, 2494 (2014) .................................................. 18

*State v. Andrews*, 227 Md. App. 350, 134 A.3d 324 (2016) .......................... *passim*

*United States v. Karo*, 468 U.S. 705 (1984) ........................................................... 11

*United States v. Leon*, 468 U.S. 897 (1984) ........................................................... 18

*United States v. Patrick*, 842 F.3d 540,
 *cert. denied*, 138 S. Ct. 2706 (2018) ............................................................. 25, 26

*Wilson v. Arkansas*, 514 U.S. 927 (1995) ............................................................. 23

*Wilson v. Prince George's Cty., Maryland*, 893 F.3d 213 (4th Cir. 2018) ....... 9, 10

*Yanez-Marquez v. Lynch*, 789 F.3d 434 (4th Cir. 2015) ......................................... 19

**Constitutional Provisions**

U.S. CONST. Amend. IV. ........................................................................................ 12

**Statutes**

28 U.S.C. §1331 ........................................................................................................ 2

28 U.S.C. §1441(a) ................................................................................................... 2

42 U.S.C. §1983 ..................................................................................................... 2, 7

Federal Rule Civil Procedure 56(a) ................................................................... 10, 24

Federal Rule of Appellate Procedure 4(a) ............................................................... 2

MD. CODE ANN., CRIM. PROC. § 1-203(a)(1) ......................................................... 13

MD. CODE ANN., CRIM. PROC. § 1-203.1 ......................................................... 23, 24

MD. CODE ANN., CTS. & JUD. PROC. § 10-4B-01(c)(1) ........................................ 15

MD. CODE ANN., CTS. & JUD. PROC. § 10-4B-01(d)(1) ........................................ 15

MD. CODE ANN., CTS. & JUD. PROC. § 10-4B-04. .................................... 15, 22, 23

MD. CONST. art. 26 ................................................................................................... 8

iv

MD. RULE ANN. 4-601(c) ................................................................................ 23

MD. RULE ANN. 4-601(d) ............................................................................... 16

MD. RULE ANN. 4-601(g) ............................................................................... 23

## Secondary Sources

2 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 4.5(b), at 731 (5th ed. 2012). ............................................. 19

Brian L. Owsley, *Triggerfish, Stingrays, and Fourth Amendment Fishing Expeditions*, 66 Hastings L.J. 183, 193-94 (2014) ............................. 16, 26

Susan Freiwald, *The Carpenter Chronicle: A Near-Perfect Surveillance*, 132 Harv. L. Rev. 205, 205 (2018) .................................................. 26

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

APPEAL NO. 18-1953

KERRON ANDREWS,

*Appellant,*

v.

BALTIMORE CITY POLICE DEPARTMENT, *ET AL.*,

*Appellees.*

Appeal from the United States District Court
For the District of Maryland
(Honorable Catherine C. Blake, District Judge)

BRIEF OF APPELLANT

## JURISDICTIONAL STATEMENT

Kerron Andrews ("Andrews") spent approximately 700 days in pretrial detention incident to an illegal and unconstitutional use of a cell-site simulator known as Hailstorm by the Baltimore City Police Department ("BPD").  On April 14, 2016, Mr. Andrews filed a Complaint and Demand for Jury Trial ("Complaint")

in the Circuit Court for Baltimore City, Maryland, against BPD, the then-Commissioner of BPD in his official capacity ("Commissioner"), and the two officers who used the Hailstorm device. JA 12–26. Count I of the Complaint was pursuant to 42 U.S.C. §1983. JA 11–13. The Complaint was served upon BPD and the Commissioner on May 12, 2016. JA 8.

On June 10, 2016, BPD and the Commissioner timely removed the case to the United States District Court for the District of Maryland pursuant to 28 U.S.C. §1441(a); the District Court had original jurisdiction over Count I of the Complaint pursuant to 28 U.S.C. §1331. JA 8–10.

On August 1, 2018, the District Court entered final judgment in favor of all defendants in the case. JA 181. On August 14, 2018, Mr. Andrews filed a timely notice of appeal. JA 182. *See* F.R.A.P. 4(a).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the District Court erred in holding that the Pen Register Order issued in this case satisfied the warrant requirement of the Fourth Amendment.

2. Whether the District Court erred in granting summary judgment in favor of the Defendants without providing Mr. Andrews an opportunity for discovery.

2

## **STATEMENT OF THE CASE**

Mr. Andrews was held in pretrial detention for approximately 700 days after the BPD used a cell-site simulator known as Hailstorm to search a private residence, without a warrant, for Mr. Andrews' cell phone to locate him.  BPD, through the Office of the State's Attorney, did not disclose the use of this technology for more than one year after Mr. Andrews' arrest. After the disclosure, the Circuit Court for Baltimore City granted Mr. Andrews' motion to suppress evidence subsequently obtained in the home by the Hailstorm device.  On appeal, the Court of Special Appeals of Maryland affirmed the Circuit Court, holding a search had occurred absent a warrant in violation of Mr. Andrews' Fourth Amendment rights and that the evidence found was fruit of the poisonous tree. *State v. Andrews*, 227 Md. App. 350, 134 A.3d 324 (2016).[1]  Subsequently, the State dropped all charges against Mr. Andrews and he was released from custody.

On May 2, 2014, following a positive identification via photographic array, Mr. Andrews was charged with attempted murder and related firearm offenses.[2]

---

[1] The State did not file a petition for a writ of certiorari in the Court of Appeals of Maryland.

[2] The State was later found to have withheld evidence of two negative photographic arrays. *Andrews*, 227 Md. App. at 360, 134 A.3d at 330.

*Andrews*, 227 Md. App. at 356, 134 A.3d at 327.  A warrant was issued for his arrest the same day. *Id.* at 356, 134 A.3d at 327.

Within days of issuance of the arrest warrant, BPD Detective Michael Spinnato submitted to the Circuit Court for Baltimore City an application to install on Mr. Andrews' cellular phone a "Pen Register\Trap & Trace and Cellular Tracking Device" ("PR\TT device") *Id.*, 134 A.3d at 327.  An order was approved and signed by a judge for the Circuit Court on May 5, 2014, "pursuant to Section 10-4B-04 of the Courts and Judicial Proceedings Article."  *Id.* at 357, 134 A.3d at 328; JA 39.

Upon service of the Pen Register Order ("PRO"), Mr. Andrews' cellular service provider released phone records to BPD.  JA 20.  These records revealed historical location information for Mr. Andrews' cell phone, which allowed BPD to discern the general location of Mr. Andrews based on his prior activities.  JA 20. BPD further submitted a request to the service provider for "GPS Precise Locations and email." *Andrews*, 227 Md. App. at 358, 134 A.3d at 329.  On that same day, May 5, 2014, Detective Spinnato received the "GPS coordinates for Mr. Andrews' cell phone (within a range of a 200 to 1600 meter radius)." *Andrews*, 227 Md. App. at 359, 134 A.3d at 329.  Mr. Andrews' location was subsequently narrowed down to the 5000 block of Clifton Avenue, Baltimore City, "where there were approximately 30-35 apartments around a U-shaped sidewalk."  *Id*.

"The ATT emails with GPS coordinates, being sent in real-time, were not sufficient to enable [BPD] to locate [Mr. Andrews'] exact location within the residential complex." JA 53. Unable to identify a precise location, BPD detectives employed the use of a handheld cell-site simulator known as "Hailstorm," "to pinpoint the location of the cell phone as being inside the residence at 5032 Clifton Avenue," Baltimore, Maryland ("5032 Clifton Ave"). JA 21, 53. "A cell-site simulator like H[ailstorm] masquerades as a cell tower and electronically forces all cell phones in the area to register with the cell-site simulator their numbers, locations, and international mobile subscriber identification number ("IMSI")," without the possessor's knowledge. JA 18. "Cell-site simulators like H[ailstorm] operate by emitting radio waves that physically connect to all cell phones in the area of the H[ailstorm]'s use, whether the cell phone is located behind walls inside a home, a car, or other private location, or in the back pocket of a person on the street." JA 18. Hailstorm is manufactured by a private corporation, Harris Corporation, who contracts with local and federal law enforcement agencies. JA 119. BPD acquired use of Hailstorm after signing a non-disclosure agreement ("NDA") with the Federal Bureau of Investigations ("FBI"), which "contracted [BPD] not to disclose to the public *or any court* any information about the Hailstorm, even its existence." JA 78. Included in the NDA is the agreement that BPD "shall not, in any civil or criminal proceeding, use or provide any information concerning the Harris Corporation

5

wireless collection equipment/technology. . . during pre-trial matters, *in search warrants* and related affidavits, in discovery. . ." JA 120. (Emphasis added.)

Detectives Spinnato and John Haley, and possibly others, walked the 5000 block of Clifton Avenue, which consists of approximately thirty to thirty-five apartments, with the Hailstorm in hand, connecting with each cell phone in each home of the area. JA 21, 53. The Hailstorm device emitted signals which penetrated the walls of the home of 5032 Clifton Avenue, and located Mr. Andrews' cell phone and Mr. Andrews inside. JA 21.  Detective Spinnato entered the residence and arrested Mr. Andrews, whose cell phone was on his person. JA 21. After arresting Mr. Andrews, Detective Spinnato obtained a warrant to search the home and recovered a gun from a couch cushion. JA 53. Following his arrest on May 5, 2014, Mr. Andrews spent approximately 700 days in pretrial detention; during the majority of this time, he was unaware that BPD located him through the use of Hailstorm technology.  JA 21.

Pursuant to two discovery requests filed by Mr. Andrews' public defender, the State eventually disclosed in May 2015, that Mr. Andrews was located through the use of a cell-site simulator. *Andrews*, 227 Md. App. at 359–60, 134 A.3d at 329. JA 22.  On June 30, 2015, Mr. Andrews filed a motion to suppress the evidence obtained from 5032 Clifton Ave, on the grounds that it was obtained in violation of his Fourth Amendment rights. *Id.* at 361, 134 A.3d at 330.  After a hearing on the

6

motion, during which the Court, with the parties' consent, relied on the "transcripts and exhibits of an earlier motions hearing," the Circuit Court granted the motion and ordered all evidence obtained by use of the cell-site simulator be suppressed. *Id.* at 361–68, 134 A.3d at 330–34.   The State appealed the trial court's judgment and the issue was heard by the Court of Special Appeals of Maryland.  *Id.* at 368, 134 A.3d at 334.

The Court of Special Appeals affirmed the trial court's ruling on March 30, 2016.  *Id.* at 420, 134 A.3d at 365.  In particular, the Court of Special Appeals held: (1) "the use of a cell[-]site simulator requires a valid search warrant, or an order satisfying the constitutional requisites of a warrant," absent an exception to the warrant requirement; (2) "BPD's use of Hailstorm was not supported by a warrant or an order requiring a showing of probable cause and reasonable limitations on the scope and manner of the search"; and (3) the evidence seized pursuant to the illegal search was fruit of the poisonous tree. *Id.* at 355, 134 A.3d at 327.  Following the court's decision, the State's Attorney for Baltimore City dropped the charges against Mr. Andrews and he was released from pretrial detention.

On April 14, 2016, Mr. Andrews filed a civil suit in the Circuit Court for Baltimore City against BPD, the Commissioner, in his official capacity, and Detectives Michael Spinnato and John Haley, in their official and individual capacities. JA 12–26.  The two-count complaint, brought under 42 U.S.C. §1983,

7

alleged violations of Mr. Andrews' rights guaranteed under the Fourth and Fourteenth Amendment and Article 26 of the Maryland Declaration of Rights, and sought a permanent injunction, monetary damages, and attorneys' fees. JA 22–26.

On June 10, 2016, BPD and the Commissioner removed the action to the United States District Court for the District of Maryland. JA 8–10. Defendants BPD and the Commissioner filed a Rule 12(b)(6) Motion to Dismiss or, in the Alternative, Motion for Summary Judgment on June 8, 2017. JA 46–48. On January 18, 2018, the District Court held a hearing on the Motion to Dismiss filed by BPD and the Commissioner.[3] JA 6.

The District Court subsequently entered a Memorandum and Order on August 1, 2018, granting Defendants' Motion to Dismiss.[4] JA 162–181. The Court found that "the PRO issued in this case constituted a warrant authorizing the BPD to conduct a search for the location of Andrews' cell phone using a [cell-site

---

[3] Detectives Spinnato and Haley filed a joint motion for partial judgment on the pleadings on December 29, 2017, on the basis of qualified immunity. JA 6.

[4] At the beginning of the motions hearing on January 18, 2018, the District Court stated only the motion filed by BPD and the Commissioner was to be addressed at that time. JA 185. Because the District Court found there was no underlying violation, it granted the detectives' motion for partial judgment without ruling on the issue of qualified immunity. JA 179.

8

simulator]," and, therefore, no Fourth Amendment violation occurred. JA 179.  A timely notice of appeal was filed by Mr. Andrews on August 14, 2018. JA 182–83.

## SUMMARY OF THE ARGUMENT

The District Court's memorandum opinion reads as if made its decision and worked backwards to find the necessary support. The District Court erred in holding that the PRO BPD obtained to locate Mr. Andrews via his cell phone, and subsequently obtain evidence against him, was the equivalent of a warrant.  The PRO failed to satisfy both the probable cause and the particularity requirement of the Fourth Amendment.  Further, the District Court erred when it granted summary judgment in favor of the Defendants without affording Mr. Andrews the opportunity to take discovery regarding operation of the Hailstorm device.  Without the requisite knowledge of how the device operates, the District Court could not adequately determine the scope of the search conducted by BPD.

## APPLICABLE STANDARD OF REVIEW

This Court "reviews *de novo* a District Court's award of summary judgment." *Wilson v. Prince George's Cty., Maryland*, 893 F.3d 213, 218–19 (4th Cir. 2018) (citing *Meyers v. Balt. Cty., Md.*, 713 F.3d 723, 730 (4th Cir. 2013)). Summary judgment is appropriate only when there is "no genuine dispute as to any material

9

fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Meyers*, 713 F.3d at 730.

In conducting its review, this Court "construes the evidence in the light most favorable to the non-moving party," Mr. Andrews. *Wilson*, 893 F.3d at 218–19; *Gen. Ins. Co. of Am. v. United States Fire Ins. Co.*, 886 F.3d 346, 353 (4th Cir. 2018), *as amended* (Mar. 28, 2018) ("We review de novo a district court's grant or denial of a motion for summary judgment, construing all facts and reasonable inferences therefrom in favor of the nonmoving party.").

## ARGUMENT

I.  **THE PEN REGISTER ORDER ISSUED IN THIS CASE DID NOT SATISFY THE WARRANT REQUIREMENT OF THE FOURTH AMENDMENT.**

A. **The BPD's surreptitious use of Hailstorm, a cell-site simulator, to locate Mr. Andrews' cell phone inside a private home constituted a search.**

BPD and the Commissioner conceded for purposes of the motion to dismiss that the "officers' conduct constituted a Fourth Amendment 'search.'" JA 172–73. The District Court found the concession "particularly appropriate in light of the Supreme Court's recent ruling in *Carpenter v. United States*, 138 S. ct. 2206 (2018)." JA 172. The District Court, referencing the concession, did not make a

10

finding as to whether the BPD's conduct constituted a search and focused only on "whether the PRO satisfied the warrant requirement." JA 173.

"The Fourth Amendment protects 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Carpenter v. United States*, 138 S. ct. 2206, 2213 (2018). "Where, as here, the Government uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a 'search' and is presumptively unreasonable without a warrant." *Kyllo v. United States*, 533 U.S. 27, 40 (2001). Analyzing the use of thermal imaging, the Supreme Court held in *Kyllo*, that "[t]he Government – absent a warrant – could not capitalize on such new sense-enhancing technology to explore what was happening within the home." *Carpenter*, 138 S. ct. at 2214 (citing *Kyllo*, 533 U.S. at 40). The holdings in *Kyllo* and *Carpenter* were grounded in the Supreme Court's decision in *United States v. Karo*, 468 U.S. 705 (1984), which held that when the government, without a warrant, "surreptitiously employs an electronic device to obtain information that it could not have obtained by observation from outside the curtilage of the house," it violates the Fourth Amendment. 468 U.S. at 715.

Detectives Spinnato and Haley used a cell-site simulator to determine the presence of a cell phone inside a private home, by "send[ing] an electronic transmission through the wall of th[e] house" to "peer over the wall of the home."

11

*Andrews*, 227 Md. App. at 363, 134 A.3d at 331. Hailstorm, the brand cell-site simulator used by BPD, was not, and still is not, in general public use and may only be employed by state and local law enforcement agencies. Prior to utilizing the equipment and technology, BPD and the State's Attorney for Baltimore City were required to sign an NDA with the FBI. JA 119–23. The purpose of this NDA was to prevent disclosure of the technology to the public as public knowledge of the technology's use and functions would render it "essentially useless for future investigations." JA 119. Absent the use of the Hailstorm, the presence of Mr. Andrews' cell phone inside 5032 Clifton Ave would "have been unknowable without physical intrusion" into the home. *Kyllo*, 533 U.S. at 40. The detectives' use of the cell-site simulator to find Mr. Andrews phone inside a private home constituted a search.

### B. The PRO issued in this case does not satisfy the warrant requirement of the Fourth Amendment.

The Fourth Amendment states "no warrants shall issue, but upon *probable cause*, supported by Oath or affirmation, and *particularly describing the place to be searched*, and the persons or things to be seized." U.S. CONST. Amend. IV. (Emphasis added.)

### i. The existence of the words *probable cause* does not make the PRO a warrant.

"The traditional standard for review of an issuing magistrate's probable cause determination has been that, so long as the magistrate had a 'substantial basis for … concluding' that a search would uncover wrongdoing, the Fourth Amendment requires no more." *Illinois v. Gates*, 462 U.S. 213, 263 (1983).   Pursuant to Maryland law, a magistrate may issue a search warrant when there is probable cause to believe that a crime is being committed by a person or in a building, or the property subject to seizure is on a person or in a building.  MD. CODE ANN., CRIM. PROC. § 1-203(a)(1).

The PRO stated: "the Court finds that probable cause exists and that the applicant has certified that the information likely to be obtained by the use of the above listed device(s) is relevant to an ongoing criminal investigation. . ."  The District Court found this language to be instructive, holding "the PRO contains *both* a finding of 'probable cause' *and* a finding that the search is likely to yield information 'relevant to an ongoing criminal investigation.'" JA 175. (Emphasis in original.)   The District Court found that this bald language satisfied the probable cause requirement.  The District Court failed to identify, however, *what* it believed the Circuit Court judge found probable cause *of*. JA 175.  Although the District Court made clear it did not believe the words "probable cause" related to the words

13

"information likely obtained by the use of the above listed device(s) is relevant to an ongoing criminal investigation," it did not indicate what it held the finding of "probable cause" to be.  JA 175.

The District Court found the existence of the words "probable cause" sufficient to meet the strict warrant requirements, but failed to read the sentence in full.  The PRO stated: ". . . the Court finds that probable cause exists and that the applicant has certified that the information likely to be obtained by the use of the above listed device(s) is relevant to an ongoing criminal investigation. . . ." JA 39.  The probable cause stated in the PRO was that "the information likely to be obtained by the use of the above listed device(s) is relevant to an ongoing criminal investigation."  The warrant requirement, however, is that there is probable cause "to believe that contraband or evidence is located in a particular place." *Gates*, 462 U.S. at 238. There could have been no legitimate finding of probable cause in the PRO because Detective Spinnato provided no facts to support that evidence sought (the location of Mr. Andrews' phone) was located in 5032 Clifton Ave.  Rather, his application for a PRO established only probable cause to believe a PR\TT of Andrews' phone may be relevant to an ongoing criminal investigation, which is a lower standard than that required by the Fourth Amendment.

The District Court disregarded entirely the language of the next paragraph that stated it is, "ORDERED, pursuant to Section 10-4B-04 of the Courts and Judicial

14

Proceedings Article of the Maryland Code. . ." JA 39. Section 10-4B-04 is found under "Subtitle 4b. Pen Registers and Trap and Trace Devices" of the Courts and Judicial Proceedings Article of the Maryland Code. *See* MD. CODE ANN., CTS. & JUD. PROC. § 10-4B-04. The subsection provides the burden necessary for issuance of a PRO, the contents of the order, the duration of the order, and that the order be sealed and confidential. *Id.*

A "pen register" is defined under Section 10-4B-01(c)(1) as "a device or process that records and decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." MD. CODE ANN., CTS. & JUD. PROC. § 10-4B-01(c)(1). A "trap and trace device" is defined as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." *Id.* at § 10-4B-01(d)(1).

Section 10-4B-04 does not discuss or authorize the use of cell-site simulators, nor does it authorize a search. "The installation and use of a pen register is not considered a 'search' under the Fourth Amendment. *See Smith v. Maryland*, 442 U.S. 735, 745–46 (1979)." JA 175. Issuance of a PRO requires a finding "that the information likely to be obtained by the installation and use is relevant to an ongoing criminal investigation." MD. CODE ANN., CTS. & JUD. PROC. § 10-4B-04(a)(1).

15

Further, the order, in accordance with the statute, authorizes the agency to install a PR\TT device for sixty days. JA 30. A search warrant, on the other hand, would have been valid for only fifteen days from the date of issuance. MD. RULE ANN. 4-601(d) (2014 Replacement Volume).

Even assuming arguendo that the term "probable cause" holds the meaning required by the Fourth Amendment, the PRO does not and cannot be anything more than an order authorizing the use of a PR\TT device. It cannot authorize the use of a cell-site simulator. Historical and real time cell-site location information obtained from service providers is different than the information gained from using a cell-site simulator. Handheld cell-site simulators allow officers to narrow the scope of the location of a targeted device. *See* Brian L. Owsley, *Triggerfish, Stingrays, and Fourth Amendment Fishing Expeditions*, 66 Hastings L.J. 183, 193-94 (2014) (discussing how law enforcement officers are able to move cell-site simulators to "determine a fairly narrow geographical location where an individual is located."). Service providers are unable to pinpoint the precise location of a cell phone, whether it be in a car, house, or public street. JA 53. This shortcoming is the exact reason BPD needed to utilize the Hailstorm device. The portability of a handheld device allowed the detectives to move it in the direction indicated by the Hailstorm; when the signal strength increased, the detectives knew they were getting warmer. *Andrews*, 227 Md. App. at 364, 134 A.3d at 332 (Detective Haley testified that when

16

the machine captures the targeted phone, it will provide the direction and strength of the signal: "Like if it says 1:00 at like an 80, well, then you know that you're kind of close to it. But if it says 1:00 at like a 40, then you know that you're probably within, I don't know, probably, you know, 20 yards of it."). The information provided via Sprint, Mr. Andrews' service provider, lead the detectives to the 5000 block of Clifton Avenue, but could not direct them to the exact house in which Mr. Andrews' phone was located. The judge who issued the PRO did not authorize use of the Hailstorm, nor could he had even contemplated it, because such method of tracking the cell phone purposefully was never disclosed to him due to the NDA into which BPD and State's Attorney for Baltimore City had entered. By utilizing the Hailstorm device, the detectives conducted a search outside the scope of the authorization to install a PR\TT device.

### ii. The PRO did not describe with particularity the apartment located at 5032 Clifton Ave as the place to be searched.

"'Probable cause' requires a finding that 'there is a fair probability that contraband or evidence of a crime will be found in a *particular* place.'" *Illinois v. Gates*, 462 U.S. at 238. (Emphasis added.) "The 'particularity requirement' demands descriptions both of the place to be searched and the persons or things to be seized." JA 87, quoting *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). "A warrant may be so facially deficient – *i.e.*, in failing to particularize the place to be searched

17

or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *United States v. Leon*, 468 U.S. 897, 932 (1984). "Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid." *Groh*, 540 U.S. at 563.

"The Founding generation crafted the Fourth Amendment as a 'response to the reviled 'general warrants' and 'writ of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity.'" *Carpenter*, 138 S. ct. at 2213 (quoting *Riley v. California*, 134 S. ct. 2473, 2494 (2014)). "The manifest purpose of th[e] particularity requirement was to prevent general searches." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "The particularity requirement 'ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.'" *Peters v. State*, 224 Md. App. 306, 342–43, 120 A.3d 839, 861 (2015) (citing *Garrison*, 480 U.S. at 84).

"In applying [the particularity-of-description] requirement to searches aimed at residences within multi[-]unit buildings, such as the search in the present case, courts have declared invalid those warrants that fail to describe the targeted unit with enough specificity to prevent a search of all the units." *Garrison*, 480 U.S. at 91–92

18

(Blackmun, J., dissenting); *accord Peters v. State*, 224 Md. App. 306, 346, 120 A.3d 839, 863 (2015) ("The generalized, though reasonable, belief that the target of a search is somewhere within a multi-unit building does not give rise to probable cause to search every unit in the building."); *see also Yanez-Marquez v. Lynch*, 789 F.3d 434, 462 (4th Cir. 2015). "A search warrant for an apartment house or hotel or other multiple-occupancy building will usually be held invalid if it fails to describe the particular subunit to be searched with sufficient definiteness to preclude a search of one or more subunits indiscriminately." 2 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 4.5(b), at 731 (5th ed. 2012) (citations omitted).

Detectives Spinnato and Haley searched each of the thirty to thirty-five apartments on the 5000 block of Clifton Avenue, "peer[ing] over the wall of the home, to see if [Mr. Andrews'] cell phone [was] behind the wall of that house." *Andrews*, 227 Md. App. 350, 363, 134 A.3d 324, 331 (2016). No warrant was issued authorizing such "wide-ranging exploratory searches." *Garrison*, 480 U.S. at 91–92 (Blackmun, J., dissenting). Detective Spinnato could not have obtained, and did not obtain, a valid warrant to search the home of 5032 Clifton Avenue, because a warrant issued on the facts provided by Detective Spinnato would have rendered the warrant facially void as a general warrant. The application for a PRO made no mention of the 5000 block of Clifton Avenue, let alone the specific residence located at 5032 Clifton Ave. Detective Spinnato's application is devoid of this information because

19

he had no probable cause to believe evidence of a crime would be found there, so he had no reason to identify it as the place to be searched.

The District Court's holding that the "particularity requirement does not demand 'a specification of the precise manner in which [the warrant is] to be executed'" is premised on a misunderstanding of the difference in technology at issue. JA 177.  It held that the PRO "did not necessarily need to specify whether the officers planned to use a pen register or a CSS," but "[i]n an event, the PRO *did* authorize the BPD to 'employ surreptitious or duplication of facilities, technical devices or equipment to accomplish the installation and use of a Pen Register\Trap & Trace and Cellular Tracking Device' and to 'initiate a signal to determine the location of the subject's mobile device on the service provider's network. . ." JA 177. (Emphasis in original).  The Court, however, once again misread the plain language of the PRO upon which it so relied.  The PRO authorized the use of surreptitious or duplication of technical devices *to accomplish the installation and use* of a PR\TT Device.  Further, the authorization to initiate a signal is authorization to do so *on the service provider's network.*  A warrant need not specify the precise manner in which it is to be executed, but it cannot be interpreted to authorize an execution method that would broaden the scope of the search identified by the issuing magistrate. The use of a Hailstorm device drastically alters the scope of the place to be searched.  It broadens the scope from information obtained by Mr.

20

Andrews' service provider to a search of all cell phones in the general vicinity of the device at the time it is activated until it is turned off.

### iii.    The BPD did not treat the PRO like a warrant until its conduct was challenged by Mr. Andrews.

The method in which the BPD located Mr. Andrews was not disclosed to *anyone* for over a year, including the judge who issued the PRO. *Andrews*, 227 Md. App. at 360, 134 A.3d at 330.   The first disclosure ever made regarding the technology used to find Mr. Andrews came in the form of an email on May 6, 2015, five months after a specific discovery request for such information, from the Assistant State's Attorney ("ASA") assigned to the case.   The email, directed to Mr. Andrews' defense counsel indicated "it was [the ASA's] understanding that 'the ATT used a stingray to locate[ ] your client via his cell phone,' but that she was waiting for 'the paperwork.'" *Id.* at 360, 134 A.3d at 330.   Without the knowledge that such device even existed, knowledge expressly prohibited by the NDA signed by BPD, the Circuit Court judge could not have authorized its use.

"As a consequence of the nondisclosure agreement, rather than apply for a warrant, prosecutors and police obtained an order under the Maryland pen register statute that failed to provide the necessary information upon which the court could make the constitutional assessments mandated in this case." *Id.* at 376, 134 A.3d at 339.

"Frequently – probably most frequently – the warrant papers including supporting affidavits are open for inspection by the press and public in the clerk's office after the warrant has been executed." *Matter of Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 300 F.Supp.3d 61, 87 (D.D.C. 2018) (quoting *Baltimore Sun Co., v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989)).  The court in *Leopold*, determining the First Amendment right of access to surveillance applications and orders, including PR/TT orders, distinguished orders granted pursuant to the Pen Register Act ("PRA") and the Stored Communications Act ("SCA") from search warrants. 886 F.2d at 87.  It found that while search warrants and applications are generally accessible by the public after their execution, the SCA "is nestled between the PRA and wiretap statute within a statutory framework that broadly prioritizes law enforcement's need for secrecy over the public's interest in transparency." *Id.*  The court held the petitioners were not entitled by the First Amendment to access orders issued pursuant to the PRA or the SCA, as there existed no tradition of openness, nor were such orders "analogous to traditional search warrants" to be accessible under the "judicially-recognized history of openness" of search warrants. *Id.* at 86.

The PRO issued by the Circuit Court "ordered that th[e] order and application be sealed until further Order of the court." JA 45. It was issued pursuant to Section 10-4B-04, which provides in subsection (d) that orders authorizing installation and

22

use of a PR\TT device be sealed, and the application of such device remain confidential. MD. CODE ANN., CTS. & JUD. PROC. § 10-4B-04(d).   This is in contradiction to the general policy of openness of search warrants following their execution.

In *Wilson v. Arkansas*, 514 U.S. 927 (1995), the Supreme Court held that the principle of announcing a search warrant "is an element of the reasonableness inquiry under the Fourth Amendment." 514 U.S. at 934.  There is "little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure." *Id.*  Maryland Rule 4-601, provided at the time relevant to the case, that "upon the execution of a warrant, a copy of the search warrant, application, and supporting affidavit. . . shall be left with the person from whom the property is taken." MD. RULE ANN. 4-601(c) (2014 Replacement Volume). The rule further allowed "a person aggrieved by the search or seizure" to file an application for inspection and copy of the warrant. MD. RULE ANN.  4-601(g) (2014 Replacement Volume).

Maryland Criminal Procedure Article § 1-203.1, which came into effect after BPD's search of Mr. Andrews, provides a process in which an officer may receive authorization to obtain real-time location information from electronic devices, by virtue of an order containing the grounds for obtaining such information.  MD. CODE

23

ANN. CRIM. PRO. § 1-203.1(b)(1)-(3); *see also* 2014 Md. Laws ch. 191 (effective Oct. 1, 2014). The statute includes safeguards "not found in the Maryland pen register statute, including. . . a provision requiring notice to the user or owner of the monitored device within 10 days absent a showing of good cause to delay. *Andrews*, 227 Md. App. at 357–58, 134 A.3d at 407; MD. CODE ANN. CRIM. PRO. § 1-203.1(d)(1)–(3). Mr. Andrews did not receive notice of the search conducted by BPD through Hailstorm until over a year after the illegal search occurred. Had BPD considered the PRO to be a search warrant, it would have provided notice in accordance with the requirements of traditional search warrants.

**II.      THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS WITHOUT ALLOWING MR. ANDREWS AN OPPORTUNITY FOR DISCOVERY.**

As outlined above, the manner in which the Hailstorm device operates raises serious constitutional issues as to whether its use by BPD effectively turned the PRO into a general warrant. Mr. Andrews objected to consideration of the PRO at the motion to dismiss stage of the case on the ground that no discovery had been taken in the case. JA 94–95. The objection was supported by an affidavit that satisfied the requirements of Rule 56(d) of the Federal Rules of Civil Procedure. JA 101–02. However, the District Court ignored the objection and converted BPD's and the

Commissioner's motion to dismiss into a motion for summary judgment, relying on the PRO.

This Court stated in *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448–49 (4th Cir. 2011):

> Such conversion is not appropriate where the parties have not had an opportunity for reasonable discovery. *Gay v. Wall,* 761 F.2d 175, 178 (4th Cir. 1985) ("Because Gay was not afforded an opportunity for reasonable discovery, the district court's treatment of the motion to dismiss as a motion for summary judgment was an abuse of discretion.").

*Accord Greater Baltimore Center for Pregnancy Concerns, Inc., v. Mayor & City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013).  The District Court's grant of summary judgment in the present case, without affording Mr. Andrews the opportunity to take discovery regarding the operation of the Hailstorm device, was an abuse of discretion.  *Cf. United States v. Patrick*, 842 F.3d 540, 546–47, *cert. denied*, 138 S. ct.  2706 (2018) (Wood, J., dissenting) ("We must know how it works and how the government used it before we can judge whether it functions in a manner sufficiently different from the location-gathering methods specified in the warrant that it amounted to a search outside the warrant's scope.").

25

## III.     THE COURT SHOULD HEAR ORAL ARGUMENT IN THIS CASE.

The use of surveillance technology, including cell-site simulators, has become increasingly more rampant in the past decade. *See* Brian L. Owsley, *Triggerfish, Stingrays, and Fourth Amendment Fishing Expeditions*, 66 Hastings L.J. 183, 193–94 (2014) ("Whatever these devices are called, they have proliferated in recent years. . ."). Law enforcement agencies show no intention to stop utilizing the hottest surreptitious devices on the market to conduct their investigations. "We know nothing about the way in which the [Hailstorm] device used in [Mr. Andrew's] case was configured, nor do we know the extent of its surveillance capabilities." *Patrick*, 842 F.3d at 546–47, *cert. denied*, 138 S. ct.  2706 (2018) (Wood, J., dissenting). The secrecy of BPD's utilization of cell-site simulators like the Hailstorm device is engraved into stone by the blanket NDA signed and abided by BPD.  The law must continually attempt to keep up with the proliferation of such technology to guard the protections provided by the Fourth Amendment. Susan Freiwald, *The Carpenter Chronicle: A Near-Perfect Surveillance*, 132 Harv. L. Rev. 205, 205 (2018) ("[T]here is often a significant lag time between the arrival of new law enforcement technologies and the laws regulating their use.").

26

## **CONCLUSION**

For the reasons stated above, Mr. Andrews requests that the Court reverse the District Court's grant of summary judgment and remand the case to the District Court for further proceedings.

Respectfully submitted,

James B. Astrachan
H. Mark Stichel
Elizabeth A. Harlan,
Trisha L. Scott
ASTRACHAN GUNST THOMAS, P.C.
217 East Redwood Street, Suite 2100
Baltimore, Maryland 21202
Telephone:  410.783.3550
Facsimile:  410.783.3530
jastrachan@agtlawyers.com
hmstichel@agtlawyers.com

*Attorneys for Appellant,*
*Kerron Andrews*

27

# STATUTORY APPENDIX

**U.S. CONST. art. IV.**

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**MD. CONST. art. 26.**

That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted.

**42 U.S.C.A. § 1983.**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

28

**MD RULE 4-601(c) (2014 Replacement Volume).**

(c) Inventory. An officer shall make and sign a written inventory of all property seized under a search warrant. At the time the search warrant is executed, a copy of the inventory together with a copy of the search warrant, application, and supporting affidavit, except an affidavit that has been sealed by order of the court, shall be left with the person from whom the property is taken if the person is present or, if that person is not present, with the person apparently in charge of the premises from which the property is taken. If neither of those persons is present at the time the search warrant is executed, the copies shall be left in a conspicuous place at the premises from which the property is taken. The officer preparing the inventory shall verify it before making the return. Upon the expiration of the order sealing an affidavit, the affidavit shall be unsealed and delivered within 15 days to the person from whom the property was taken or, if that person is not present, the person apparently in charge of the premises from which the property was taken.

**MD. RULE 4-601(d) (2014 Replacement Volume).**

(d) Return. An executed warrant shall be returned to the issuing judge, or if that judge is not immediately available, to another judge of the same circuit if issued by a circuit court, or of the same district if issued by the District Court, as promptly as possible and in any event within ten days after the date the search warrant is executed or within any earlier time set forth in the search warrant for its return. The return shall be accompanied by the verified inventory. A search warrant unexecuted within 15 days after its issuance shall be returned promptly to the issuing judge.

**MD. RULE ANN. 4-601(g) (2014 Replacement Volume).**

(g) Inspection of warrant, inventory, and other papers. Upon application filed by a person from whom or from whose premises property is taken under a search warrant or by a person having an interest in the property or by a person aggrieved by a search or seizure, the court of the county in which the search warrant is filed shall order that warrant, inventory and other related papers filed be made available to the person or that person's attorney for inspection

29

and copying. Upon the filing of the application, the court may order that notice thereof be given to the State's Attorney.

## MD. CODE ANN., CTS. & JUD. PROC. § 10-4B-01(c) (2018).

(c)(1) "Pen register" means a device or process that records and decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted.

>(2) "Pen register" does not include any device or process used:

>>(i) By a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by the provider or any device used by a provider or customer of a wire communication service for cost accounting or other similar purposes in the ordinary course of its business; or

>>(ii) To obtain the content of a communication.

## MD. CODE ANN., CTS. & JUD. PROC. § 10-4B-01(d) (2018).

(d)(1) "Trap and trace device" means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication.

>(2) "Trap and trace device" does not include a device or process used to obtain the content of a communication.

## MD. CODE ANN., CTS. & JUD. PROC. § 10-4B-04 (2018).

(a)(1) Upon an application made under § 10-4B-03 of this subtitle, the court shall enter an ex parte order authorizing the installation and use of a pen register or a trap and trace device within the jurisdiction of the court if the court finds that the information likely to be obtained by the installation and use is relevant to an ongoing criminal investigation.

30

(2) On service, an order issued under paragraph (1) of this subsection shall apply to any person providing wire or electronic communication service whose assistance may facilitate the execution of the order.

(b) An order issued under this section shall:

(1) Specify the identity, if known, of the person to whom is leased or in whose name is listed the telephone line or other facility to which the pen register or trap and trace device is to be attached or applied;

(2) Specify the identity, if known, of the person who is the subject of the criminal investigation;

(3) Specify the attributes of the communications to which the order applies, including the number or other identifier and, if known, the location of the telephone line or other facility to which the pen register or trap and trace device is to be attached or applied, and, in the case of a trap and trace device, the geographic limits of the trap and trace order;

(4) Contain a description of the offense to which the information likely to be obtained by the pen register or trap and trace device relates; and

(5) Direct, upon the request of the applicant, the furnishing of information, facilities, and technical assistance necessary to accomplish the installation of the pen register or trap and trace device under § 10-4B-05 of this subtitle.

(c)(1) An order issued under this section shall authorize the installation and use of a pen register or a trap and trace device for a period not to exceed 60 days.

(2) Extensions of an order issued under this section may be granted upon a new application for an order under § 10-4B-03 of this subtitle and upon the judicial finding required under subsection (a) of this section. An extension may not exceed 60 days.

(d) An order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that:

(1) The order be sealed until further order of the court; and

(2) The person owning or leasing the line to which the pen register or a trap and trace device is attached or applied, or who is obligated by the

31

order to provide assistance to the applicant, not disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the court.

## MD. CODE ANN., CRIM. PROC. § 1-203(a)(1) (2018).

(a)(1) A circuit court judge or District Court judge may issue forthwith a search warrant whenever it is made to appear to the judge, by application as described in paragraph (2) of this subsection, that there is probable cause to believe that:

> (i) a misdemeanor or felony is being committed by a person or in a building, apartment, premises, place, or thing within the territorial jurisdiction of the judge; or

> (ii) property subject to seizure under the criminal laws of the State is on the person or in or on the building, apartment, premises, place, or thing.

## MD. CODE ANN. CRIM. PRO. § 1-203.1(b)(1)-(3) (2018).

(b)(1) A court may issue an order authorizing or directing a law enforcement officer to obtain location information from an electronic device after determining from an application described in paragraph (2) of this subsection that there is probable cause to believe that:

> (i) a misdemeanor or felony has been, is being, or will be committed by the owner or user of the electronic device or by the individual about whom location information is being sought; and

> (ii) the location information being sought:

>> 1. is evidence of, or will lead to evidence of, the misdemeanor or felony being investigated; or

>> 2. will lead to the apprehension of an individual for whom an arrest warrant has been previously issued.

(2) An application for an order under this section shall be:

32

(i) in writing;

(ii) signed and sworn to by the applicant; and

(iii) accompanied by an affidavit that:

1. sets forth the basis for probable cause as described in paragraph (1) of this subsection; and

2. contains facts within the personal knowledge of the affiant.

(3) An order issued under this section shall:

(i) name or describe with reasonable particularity:

1. the type of electronic device associated with the location information being sought;

2. the user of the electronic device, if known, or the identifying number of the electronic device about which location information is sought;

3. the owner, if known and if the owner is a person or an entity other than the user, of the electronic device;

4. the grounds for obtaining the location information; and

5. the name of the applicant on whose application the order was issued;

(ii) authorize the executing law enforcement officer to obtain the location information without giving notice to the owner or user of the electronic device or to the individual about whom the location information is being sought for the duration of the order;

(iii) specify the period of time for which location information is authorized to be obtained; and

(iv) if applicable, order the service provider to:

1. disclose to the executing law enforcement officer the location information associated with the electronic device for the period of time authorized; and

33

2. refrain from notifying the user, owner, or any other person of the disclosure of location information for as long as the notice under subsection (d) of this section is delayed.

## MD. CODE ANN. CRIM. PRO. § 1-203.1(d)(1)-(3) (2018).

(d)(1) Notice of the location information order shall be delivered to the user and, if known and if the owner is a person or an entity other than the user, the subscriber of the electronic device from which the location information is sought.

(2) The notice shall:

    (i) state the general nature of the law enforcement inquiry; and

    (ii) inform the user or owner:

        1. if applicable, that location information maintained by the service provider was supplied to a law enforcement officer;

        2. if applicable, the identifying number associated with the electronic device;

        3. the dates for which the location information was supplied;

        4. whether notification was delayed; and

        5. which court authorized the order.

(3) Subject to paragraph (4) of this subsection, notice must be delivered within 10 calendar days after the expiration of the order.

## REQUEST FOR ORAL ARGUMENT

Mr. Andrews requests an oral argument pursuant to Rule 34 of the Federal Rules of Appellate Procedure.

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that the foregoing brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 6107 words in 14-point Times New Roman proportional text. The word processing program used to prepare this brief was Microsoft Word for Office 365.

_/s/ H. Mark Stichel_
*Attorney for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2018, a copy of the foregoing Appellant's Brief was filed and served electronically on the court's electronic-filing system on:

Andre M. Davis, City Solicitor
Michael Patrick Redmond
Rachel A. Simmonsen
Baltimore City Law Department, Suite 101
100 North Holliday Street
Baltimore, Maryland 21202

_/s/ H. Mark Stichel_
*Attorney for Appellant*

35